UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KENNETH K. HASLINGER,<br><br>       Plaintiff,<br><br> -against-<br><br>WESTCHESTER COUNTY, ARAMARK CORRECTIONAL SERVICES, LLC, FOOD DIRECTOR MANUEL MENDOZA, FOOD SERVICE MANAGER DARNELL FLAX, LAW LIBRARIAN K. HEWITT, and WESTCHESTER DOC COMMISSIONER SPANO,<br><br>       Defendants. | 18-cv-5413 (NSR)<br><br>OPINION & ORDER |

NELSON S. ROMÁN, United States District Judge:

  Plaintiff Kenneth K. Haslinger ("Plaintiff"), proceeding *pro se*, commenced this action on June 14, 2018, pursuant to 42 U.S.C. § 1983 ("§ 1983" or "Section 1983"). (ECF No. 2.) Plaintiff asserts claims against Aramark Correctional Services, LLC ("Aramark"), Manual Mendoza ("Mendoza"), and Darnell Flax ("Flax") (collectively, "Aramark Defendants"); Westchester County, Law Librarian K. Hewitt, and Westchester DOC Commissioner Spano (collectively, "State Defendants"), alleging violations of his Fourteenth Amendment rights by Defendants.

  Pursuant to Federal Rule of Civil Procedure 12(b)(6), the Aramark Defendants have moved to dismiss the Complaint. (ECF No. 34.) Plaintiff does not oppose the motion. For the following reasons, the Aramark Defendants' motion to dismiss is GRANTED. Dismissal of Plaintiff's claims against the Aramark Defendants is without prejudice and with leave to replead.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 09/09/2020

1

**BACKGROUND**

The following facts are taken from Plaintiff's Complaint and are accepted as true for the purposes of this motion. *See Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009). Alleged facts that are not related to Plaintiff's claims against the Aramark Defendants have been omitted.

Plaintiff, a pretrial detainee at the time of the events described in the Complaint, arrived at Westchester County Jail ("WCJ") on April 22, 2018. (Compl. (ECF No. 2) 5.) Since that time, his meals have arrived "ice cold," with meat either very undercooked or overcooked, juice that expired two years before, and soggy and brown salad. (*Id.*) The trays on which food is served contains "black mold" and peeling plastic that "seems to always mix with the food." (*Id.* 5-6.) On four separate occasions, Plaintiff has found dead insects lodged within his food and has not been given a replacement meal when he complained. (*Id.* 5.) Plaintiff has also found strands of hair in his food on several occasions. (*Id.* 6.) Plaintiff believes this is due to inmate workers who handle the food not wearing gloves or hairnets. (*Id.*). According to Plaintiff, the meals offered at WCJ are "always different from [D]efendants['] menu and are always a gathering of leftover foods from prior weeks," bearing a "rotted taste." (*Id.*) Further, the food being served comes in "minimal portions." (*Id.*)

Plaintiff attempted to file a grievance with "Sergeant Grant" at WCJ on June 10, 2018. (*Id.* 6.) However, Sergeant Grant advised Plaintiff that the jail was not accepting any more food-related grievances and that he had to mail his grievance directly to Aramark. (*Id.*) Plaintiff alleges that Defendants are aware of the food-related issues in the Complaint based on prior lawsuits, grievances, verbal and written complaints, and daily meetings where grievances are discussed. (*Id.*) Plaintiff further states that Westchester County has a "pattern of serving food in the condition stated" based on other unspecified lawsuits filed in this Court. (*Id.*)

2

As a consequence of the food-related issues, Plaintiff alleges that he suffered nausea, vomiting, explosive diarrhea, fatigue, dehydration, weight loss, light-headedness, chapped lips, dizziness, stomach pains, constant headaches, and hunger pains.  (*Id.* 8.)  He seeks nominal damages, compensatory damages in the amount of $500,000.00, and punitive damages in the amount of $1,000,000.00.  (*Id.*)

## **LEGAL STANDARD**

On a 12(b)(6) motion, dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  When there are well-pled factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Id*. at 679.  When a motion to dismiss a complaint is unopposed, a court should nevertheless "assume the truth of a pleading's factual allegations and test only its legal sufficiency."  *McCall v. Pataki*, 232 F.3d 321, 322 (2d Cir. 2000).

The critical inquiry is whether the plaintiff has pled sufficient facts to nudge the claims "across the line from conceivable to plausible."  *Twombly*, 550 U.S. at 555.  A motion to dismiss will be denied where the allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.

Where a *pro se* plaintiff is concerned, courts must construe the pleadings in a particularly liberal fashion.  *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009).  In fact, courts must interpret the *pro se* plaintiff's pleading "to raise the strongest arguments that [it] suggest[s]."  *Harris v. City of New York*, 607 F.3d 18, 24 (2d Cir. 2010) (internal quotations and citation omitted).  Nevertheless, a *pro se* plaintiff's pleadings must contain factual allegations that sufficiently "raise a right to relief

3

above the speculative level," *Jackson v. N.Y.S. Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010), and the court's duty to construe the complaint liberally is not "the equivalent of a duty to re-write it," *Geldzahler v. N.Y. Med. College*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009).

## DISCUSSION

The Aramark Defendants argue, among other things, that Plaintiff's claims against Aramark and the individual Aramark Defendants in their official capacities fail because Plaintiff has not established *Monell* liability, and that Plaintiff's claims against Defendants Mendoza and Flax in their individual capacities fail because Plaintiff has not alleged their personal involvement in a constitutional deprivation.  (Defs. Mem. of Law in Support of Mot. to Dismiss ("Defs. Mot.") (ECF No. 35) 8-14.)  For the reasons that follow, the Court agrees.

### I. Municipal Liability

Under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), a municipality, or private actor engaged in governmental action,[1] may not be held liable under Section 1983 on a *respondeat superior* theory solely because the municipality employs a tortfeasor.  *Monell*, 436 U.S. at 691.  Therefore, under *Monell*, a plaintiff must demonstrate "that the municipality itself caused or is implicated in the constitutional violation."  *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 125 (2d Cir. 2004).  This generally requires a plaintiff to establish that "(1) an official custom or policy [ ] (2) subjected [him or her] to (3) a denial of a constitutional

---

[1] Courts that have considered the issue have found that Aramark, in its capacity as a food provider at WCJ, can be viewed a state actor for purposes of assessing *Monell* liability.  *See, e.g.*, *Pagan v. Westchester Cty.*, No. 12 Civ. 7669(PAE)(JCF), 2014 WL 982876, at *23-24 (S.D.N.Y. Mar. 12, 2014).  Indeed, this Court has previously explained that (1) "Aramark's 'seemingly private' behavior can be treated as that of the state given that the challenged action, proper food service, flows directly from the obligations of the government entity and is performed under its supervision," and (2) "Aramark, by providing meals to inmates, performs a 'public function' and therefore is a state actor."  *Salgado v. DuBois*, No. 17-cv-6040 (NSR), 2019 WL 1409808, at *9 (S.D.N.Y. Mar. 28, 2019).  Regardless, the Court need not address this issue in depth here because Aramark has permitted the Court to treat it as a state actor for purpose of this motion only.  (Defs. Mot. 8.)

right." *Ferrari v. Cty. of Suffolk*, 790 F. Supp. 2d 34, 40 (E.D.N.Y. 2011); *see also Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008) ("In order to prevail on a claim against a municipality under [S]ection 1983 based on acts of a public official, a plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury."). To establish an official custom or policy, a plaintiff must allege

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

*White v. Westchester Cty.*, No. 18-CV-730 (KMK), 2018 WL 6726555, at *10 (S.D.N.Y. Dec. 21, 2018) (quoting *Brandon v. City of New York*, 705 F. Supp. 2d 261, 276-77 (S.D.N.Y. 2010)).

If a plaintiff premises *Monell* liability on an unofficial policy or custom, the practice, custom, or usage must be so widespread and so persistent that it has the force of law. *Goode v. Westchester Cty.*, No. 18-cv-2963 (NSR), 2019 WL 2250278, at *3 (S.D.N.Y. May 24, 2019). Alternatively, where municipal liability is based on a failure to train employees, the inadequate training must "reflect[ ] deliberate indifference to ... constitutional rights." *City of Canton v. Harris*, 489 U.S. 378, 392 (1989). To prove deliberate indifference, a plaintiff must properly plead (1) "that a policymaker knows 'to a moral certainty' that her employees will confront a given situation"; (2) "that the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation"; and (3) "that the wrong choice by the ... employee will frequently cause the deprivation of a citizen's constitutional rights." *Okin v. Vill. of Cornwall-On-Hudson*

5

*Police Dep't*, 577 F.3d 415, 440 (2d Cir. 2009) (citing *Walker v. City of New York*, 974 F.2d 293, 297-98 (2d Cir. 1992)).

To the extent that Plaintiff intends to suggest that the prison workers who prepare his food were not properly supervised because they were not wearing hairnets, the Complaint does not contain sufficient factual matter to state a claim. A failure to train or supervise constitutes a policy or custom that is actionable under § 1983 only where "in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers ... can reasonably be said to have been deliberately indifferent to the need." *City of Canton v. Harris*, 489 U.S. 378, 390 (1989). Here, Plaintiff merely infers that prison workers failed to wear their hairnets because he found hair in his food on several occasions. This is insufficient to state a *Monell* claim. *See Quick v. Westchester Cnty.*, No. 18-CV-243, 2019 WL 1083784, at *5 (S.D.N.Y. Mar. 7, 2019) (dismissing *Monell* claim where a plaintiff alleged failure to supervise kitchen workers who did not wear hair nets because the complaint was "devoid of any detailed factual allegations" that the municipal employer lacked "a relevant training or supervisory program" or that the employer "was otherwise deliberately indifferent to food preparation problems").

Plaintiff has not otherwise alleged the existence of any policy, any actions taken or decisions made by any Aramark policymaking officials, any systemic failures to train or supervise, or any practices so widespread that they practically have the force of law. Although Plaintiff summarily alleges that Defendants were aware of the food issues he identifies through prior lawsuits, grievances, verbal and written complaints, and daily meetings where grievances are discussed, Plaintiff does not provide any factual details about such lawsuits, grievances, and

complaints. As other courts in this District have observed, such lack of detail proves fatal to a plaintiff's *Monell* claims. *See, e.g.*, *Mercedes v. Westchester Cnty.*, No. 18-CV-4087, 2019 WL 1429566, at *4–5 (S.D.N.Y. Mar. 29, 2019) (dismissing *Monell* claim against Aramark and county alleging plaintiff was served unhygienic and inedible food where plaintiff did not allege the existence of any policy, any actions taken or decisions made by policymaking officials, any systemic failures to train or supervise, or any "factual indicia from which this Court could infer the existence of a policy or custom"); *Hoffstead v. Aramark Corr. Servs., LLC*, No. 18-CV-2381, 2019 WL 1331634 (S.D.N.Y. Mar. 25, 2019) (same).

Accordingly, Plaintiff's claims against Aramark and against Mendoza and Flax in their official capacities must be dismissed.

## II. Individual Liability

In general, "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977). "[A] defendant in a § 1983 action may not be held liable for damages for constitutional violations merely because he [or she] held a high position of authority." *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996); *see also Grullon v. City of New Haven*, 720 F.3d 133, 138-39 (2d Cir. 2013). Personal involvement of a defendant may be shown by evidence of any of the following factors (the "*Colon* factors"):

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Grullon*, 720 F.3d at 139 (quoting *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)).[2]

Notably, "mere 'knowledge and acquiescence'" to unconstitutional conduct, or mere failure to act on a complaint, without more, fails to state a claim under Section 1983. *See Faulk v. N.Y.C. Dep't of Cor.*, No. 08-CV-1668(LGS), 2014 WL 239708, at *10 (S.D.N.Y. Jan. 21, 2014); *Mateo v. Fischer*, 682 F. Supp. 2d 423, 430 (S.D.N.Y. 2010) ("[T]he receipt of letters or grievances, by itself, does not amount to personal involvement."). Furthermore, dismissal is typically warranted where a plaintiff "fails to make any factual allegations" against individually named defendants, and instead "only generally alleges" violations by staff or employees. *See Hoffstead v. Aramark Corr. Servs., LLC*, No. 18 CV 2381 (VB), 2019 WL 1331634, at *3 (S.D.N.Y. Mar. 25, 2019) (dismissing claims against individual defendants where "Plaintiff fail[ed] to make any factual allegations against [the named defendants]" and "only generally allege[d] throughout his complaint that 'Aramark's staff' and 'kitchen staff' served him food to which he was allergic").

Here, Plaintiff has failed to establish the individual Aramark Defendants' personal involvement in the alleged constitutional violations. Plaintiff never mentions Mendoza or Flax at any point in the factual allegations of his complaint. Without any facts about what role, if any, these Defendants had in the alleged constitutional violations, Plaintiff's claims against them plainly fail.

That Mendoza is named as the Aramark Food Service Director and Flax as the Aramark

---

[2] Although there is a split in authority, "[t]he majority of the district courts [in this circuit] ... have held that, absent any contrary directive from the Second Circuit, all five *Colon* factors survive where the constitutional violation at issue does not require a showing of discriminatory intent." *Allah v. Annucci*, No. 16-CV-1841 (KMK), 2017 WL 3972517, at *6 (S.D.N.Y. Sept. 7, 2017) (quoting *El-Hanafi v. United States*, No, 13-CV-2072, 2015 WL 72804, at *13 (S.D.N.Y. Jan. 6, 2015)) (collecting cases). This Court has already expressed its agreement with this proposition and, given that it will ultimately dismiss Plaintiff's equal protection claim, the Court will apply it with equal force here. *See Booker v. Griffin*, No. 16-CV-00072 (NSR), 2018 WL 1614346, at *11 (S.D.N.Y. Mar. 31, 2018); *Marshall v. Annucci*, No. 16-CV-8622 (NSR), 2018 WL 1449522, at *9 (S.D.N.Y. Mar. 22, 2018).

Food Service Manager does not change the analysis, because a defendant "cannot be held liable for the service of rotten [food] based on a *respondeat superior* theory." *Quick,* 2019 WL 1083784, at *4 (citations omitted); *see also Iqbal*, 556 U.S. at 676 ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *Banks v. Annucci*, 48 F. Supp. 3d 394, 416 (N.D.N.Y. 2014) ("Where a defendant is a supervisory official, a mere 'linkage' to the unlawful conduct through the 'chain of command' (i.e., under the doctrine of *respondeat superior*) is insufficient to show his or her personal involvement in that unlawful conduct." (citations omitted)). There are no alleged facts showing that Mendoza or Flax were personally involved in the alleged unconstitutional deprivation at issue. *See Falls v. Pitt*, No. 16-CV-8863, 2018 WL 3768036, at *6 (S.D.N.Y. Aug. 8, 2018) (holding that personal involvement was not established where the plaintiff failed to allege that the defendants were "present" for, "participated directly" in, or "somehow permitted" the alleged violation); *Webster v. Fischer*, 694 F. Supp. 2d 163, 179 (N.D.N.Y. 2010) ("Vague and conclusory allegations that a supervisor has failed to train or properly monitor the actions of subordinate employees will not suffice to establish the requisite personal involvement and support a finding of liability.").

Accordingly, Plaintiff's claims against Mendoza and Flax in their individual capacities must be dismissed.

## CONCLUSION

For the foregoing reasons, the Aramark Defendants' motion to dismiss the Complaint is GRANTED, and the Complaint is dismissed as against the Aramark Defendants without prejudice. Plaintiff shall be granted leave to file an Amended Complaint addressing the deficiencies identified herein upon this Court's disposition of a second motion to dismiss the Complaint currently due to

be filed by the State Defendants on November 10, 2020. The Court shall provide the parties with deadlines for the Amended Complaint and responsive pleadings in a subsequent Order disposing of the State Defendants' motion.

      The Clerk of Court is respectfully directed to terminate the motion at ECF No. 34. The Clerk is also respectfully directed to mail a copy of this Opinion and Order to Plaintiff at the address listed on ECF and to file proof of service on the docket.

Dated: September 9, 2020                        SO ORDERED:
White Plains, New York

                                                 NELSON S. ROMÁN
                                                United States District Judge